UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER MANCINAS,

Petitioner,

v.

MARCUS POLLARD, Acting Warden,[1]

Respondent.

Case No. 18-cv-06235-YGR (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; AND DENYING CERTIFICATE OF APPEALABILITY**

## I.      INTRODUCTION

Petitioner Christopher Mancinas, a state prisoner, is currently incarcerated at the Richard J. Donovan Correctional Facility, pursuant to his judgments in three cases, *People v. Christopher Mancinas*, Sonoma County Superior Court Case Nos. SCR498868, SCR590577, and SCR595589. On April 16, 2012, in Case No. SCR595589, a Sonoma County jury convicted Petitioner of active participation in a criminal street gang (count four), which was in connection with the gang-related death of a non-gang member named Dewey Tucker,[2] with one strike prior conviction, one prior serious felony conviction, and two prior prison terms. *See People v. Mancinas*, No. A141759, 2017 WL 1422589, at *1-2 (Cal. Ct. App. Apr. 21, 2017, as modified on denial of reh'g, May 16, 2017). Meanwhile, on September 13, 2013, in Case No. SCR590577, Petitioner pleaded no contest to possession of methamphetamine for sale, transportation of methamphetamine, possession of cocaine, and possession of a firearm by a felon, with one strike prior conviction and prior prison term. *See id.* at *1. Lastly, on December 4, 2013, in Case No. SCR498868, Petitioner pleaded no contest to assault with a deadly weapon and admitted one strike prior conviction. *See id.* On April 9, 2014, the trial court sentenced Petitioner to an aggregate twenty-two years in

---

[1] Marcus Pollard, the current acting warden of the prison where Petitioner is incarcerated, has been substituted as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] In Case No. SCR595589, the jury acquitted Petitioner on the remaining three counts, including conspiracy to commit murder (count one), murder (count two), and discharging a firearm at an occupied vehicle (count three). *See Mancinas*, 2017 WL 1422589, at *1.

United States District Court
Northern District of California

prison for the three aforementioned cases.[3]  *Id.* at 2.

Petitioner brings the instant *pro se* habeas action under 28 U.S.C. § 2254 to challenge his conviction for actively participating in a criminal street gang in connection with Tucker's murder in Case No. SCR595589.  Dkt. 1.

Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the petition for the reasons set forth below.

## II.    FACTUAL BACKGROUND

The California Court of Appeal issued a published opinion, upholding in part and reversing in part the convictions of Petitioner's co-defendant, Raul Vega,[4] who was tried separately, in which it described in detail the facts concerning Tucker's murder on January 12, 2010.  *See People v. Vega*, 236 Cal. App. 4th 484, 487-89 (2015).  Therefore, the Court of Appeal did not provide a more detailed recitation of the murder in its unpublished opinion affirming Petitioner's conviction and, instead, summarized the facts of Petitioner's offenses in limited context, as follows.[5]

> No. SCR595589 involves the murder of Tucker, which was described in detail in a published opinion from this court, where we upheld in part and reversed in part the convictions of Raul Vega, a co-defendant of [Petitioner] who was tried separately.  (See *People v. Vega* (2015) 236 Cal. App. 4th 484, 487-489 (*Vega*).)[FN5]  We need not give a more detailed recitation of the murder here.  Of course, for purposes of this appeal, we rely exclusively on the evidence presented at [Petitioner]'s trial, which differed significantly from the evidence presented at Vega's trial.  We therefore will discuss: (1) the evidence presented by the district attorney in this case that we find to be sufficient to support [Petitioner]'s conviction under section 186.22, subdivision (a), and (2) the evidence [Petitioner] presented in his defense.  Before doing so, we note three uncontroverted facts.  First,

---

[3] In Case No. SCR595589, Petitioner was sentenced to a term of seven years and four months, consecutive to his other cases, Case Nos. SCR498868 and SCR590577.  Resp't Ex. A, CT 590-591.

[4] Vega filed a separate federal habeas action, Case No. C 16-05145 YGR (PR), which the Court denied on the merits and issued judgment.  *See* Dkts. 16, 17 in Case No. C 16-05145 YGR (PR) (N.D. Cal. Oct. 24, 2017).  Thereafter, the Ninth Circuit denied a certificate of appealability. *See* Dkt. 22 in Case No. C 16-05145 YGR (PR).

[5] This summary is presumed correct.  *See Hernandez v. Small*, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002); 28 U.S.C. § 2254(e)(1).

there are two rival factions of the Sureños (a street gang controlled by the Mexican Mafia) in Santa Rosa, known as Varrio Sureño Loco (VSL) and Angelino Heights (AH). Second, [Petitioner] was a well-respected and active high-ranking member of the Sureños gang at the time of Tucker's murder, and although he claimed not to be a member of either AH or VSL, he had influence with both. And third, [Petitioner] was an FBI informant for about two years until June 2010, although [Petitioner] was not informed of his termination as an informant until October of that year.

[FN 5:] We cite *Vega* in lieu of a detailed recitation of background facts regarding the two rival subsets of the Sureños in Santa Rosa, the inter-gang hostilities that led up to Tucker's murder, the letter received by the police on January 12, 2010, identification of the participants in Tucker's murder, the location of the murder, and the manner in which he was killed. We do not rely upon it as evidence of [Petitioner]'s role in the events.

### 1. The District Attorney's Case

In early 2010, both gangs and the police were aware some feud or war was mounting between AH and VSL. For instance, on January 12, 2010, the police came into possession of a letter written by an imprisoned VSL member calling for the assassination of three senior members of AH, as well as [Petitioner]. This letter appeared to set the rest of the events into motion.

Based on circumstantial evidence and impeachment of [Petitioner]'s self-serving testimony, the district attorney argued [Petitioner] drove to Vallejo on January 12 with other AH members to have Vega kill Ramon Ochoa or Vicente Tapia, both high-ranking VSL members, in retaliation for the murder of Alejandro Ortega, a member of the AH gang, a few weeks earlier. That evening, [Petitioner] borrowed his girlfriend Nicole Allen's car; when he returned later that night, he told her to not talk to the police about it. The AH gang members thought Ochoa would be at Vicente Tapia's apartment complex on January 12. Once in Vallejo, [Petitioner] helped Vega and another AH member obtain a stolen vehicle to take to Tapia's apartment complex. Vega and his companion followed a white car leaving Tapia's apartment complex, believing Ochoa was the driver; [Petitioner] followed close behind. After following the white car onto the freeway, Vega ended up shooting Tucker, who was the actual driver and is not affiliated with any gang. Among other evidence, the district attorney used [Petitioner]'s cell phone records and expert witness testimony to place [Petitioner] at or near the scene of the crime.

For the next day or so following the murder, [Petitioner] spoke with another high-ranking Sureños member and close friend, Gerardo Hernandez, over a dozen times. In May 2010, police recovered a handgun from Hernandez's residence that was later believed to be the weapon used in Tucker's murder. The gun had been stolen from Arizona at or around a time when [Petitioner] and, later, Hernandez lived there, although there was no direct evidence tying either to the

3

theft. [Petitioner] also knew where the stolen vehicle had been dumped. Expert witnesses testified that gang members generally know which other members have weapons, and believe the existence and handling of stolen cars are important.

### 2. [Petitioner]'s Defense

In his defense, [Petitioner] testified that on January 12 he was not aware of what Vega and the others were planning to do when they traveled together to Vallejo, nor when they chased after the white car (which turned out to be Tucker's) that left Tapia's apartment complex. Rather, [Petitioner] claimed he traveled to Vallejo to help broker a peace deal between the warring factions of the Sureños gang. Indeed, [Petitioner] testified that he and Ochoa (Vega's intended target) were "extremely close friends," so he would not have participated in trying to kill Ochoa. There was also evidence that [Petitioner] had given Ochoa's name to the FBI as a possible suspect in the killing of Ortega, which had started the AH-VSL feud. [Petitioner] denied helping steal the car Vega drove to kill Tucker, instead insisting another gang member had already stolen the car and offered it to Vega. In addition, [Petitioner] testified he was not at the scene when Vega shot at the white car, but did drive up to see the aftermath a few minutes later.

*Mancinas*, 2017 WL 1422589, at *2-3 (brackets added).

## III.    PROCEDURAL HISTORY

Petitioner appealed his judgments in Case Nos. SCR498868, SCR590577, and SCR595589 to the California Court of Appeal, and the three criminal appeals were consolidated. *Id.* at *1. Petitioner raised no issues in the first case, Case No. SCR498868. *Id.* In Case No. SCR590577, Petitioner requested the state appellate court to reduce his conviction on one count of cocaine possession from a felony to a misdemeanor and remand for resentencing under Proposition 47. *Id.* And in Case No. SCR595589, Petitioner sought reversal of his conviction for actively participating in a criminal street gang under California Penal Code § 182.66(a) for lack of sufficient evidence. *Id.*

On April 21, 2017, the California Court of Appeal affirmed Petitioner's judgments in an unpublished decision. *Id.* at *7. The state appellate court concluded Petitioner's appeals in Nos. SCR498868 and SCR590577 are procedurally barred and affirmed those convictions. *Id.* at *1. The state appellate court further concluded that substantial evidence existed to support the conviction in Case No. SCR595589 and affirmed the conviction in that case as well. *Id.* at *4-7.

4

Thereafter, Petitioner filed a petition for review, and the California Supreme Court denied review on July 19, 2017. Resp't Ex. L. Petitioner did not pursue collateral review in state court.

On October 11, 2018, Petitioner filed the instant petition, under 28 U.S.C. § 2254. Dkt. 1. Petitioner raises the same sufficiency of the evidence claim he raised on direct appeal as to his conviction in Case No. SCR595589. *Id.* at 5; Dkt. 1-1 at 53-61.[6]

On November 28, 2018, this Court issued an Order to Show Cause. Dkt. 8. On February 27, 2019, Respondent filed an Answer. Dkt. 15. Petitioner has not filed a Traverse, and the time to do so has passed. The matter is fully briefed and ripe for adjudication.

## IV.    LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *see Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *see Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of section 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently

---

[6] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of section 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.  *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).  Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

In determining whether a state court's decision is contrary to, or involves an unreasonable application of, clearly established federal law, courts in this Circuit look to the decision of the highest state court to address the merits of the petitioner's claim in a reasoned decision.  *See Wilson v. Sellers*, __ U.S. __, 138 S. Ct. 1188, 1192 (2018); *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

Even if constitutional error is established, habeas relief is warranted only if the error had a "substantial and injurious effect or influence in determining the jury's verdict."  *Penry v. Johnson*, 532 U.S. 782, 795-96 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

6

On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). In applying the above standards on habeas review, the Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). Thus, a federal court will "look through" the unexplained orders of the state courts rejecting a petitioner's claims and analyze whether the last reasoned opinion of the state court unreasonably applied Supreme Court precedent. *See Ylst*, 501 U.S. at 804-06; *LaJoie*, 217 F.3d at 669 n.7. The last reasoned decision in this case is the state appellate court's unpublished disposition issued on April 21, 2017, which relates to Petitioner's claim in the petition. *Mancinas*, 2017 WL 1422589, at *4-7.

## V.   LEGAL CLAIM

Petitioner argues that the evidence was insufficient to support his conviction for actively participating in a criminal street gang under California Penal Code § 186.22(a). Dkt. 1 at 5. Specifically, he contends that—where the jury acquitted him of the three underlying felonies on which the prosecution relied to support the active gang participation—the evidence, consequently, was insufficient to establish the third requirement of the substantive gang offense pursuant to California Penal Code § 186.22(a). Dkt. 1-1, Ex. B at 59-61. Petitioner does not challenge the sufficiency of the evidence as to the other elements of the substantive gang offense.

### A.   State Court Opinion

The California Court of Appeal discussed Petitioner's sufficiency of the evidence claim and rejected it as follows:

> In No. SCR595589, [Petitioner] contends there is insufficient evidence to sustain his conviction under section 186.22, subdivision (a). We reject this argument and affirm.

## 1. Standard of Review

We review the jury's conviction for substantial evidence. "The test of whether evidence is sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citations.] In making this assessment, the court looks to the whole record, not just the evidence favorable to the respondent to determine if the evidence supporting the verdict is substantial in light of other facts." (*People v. Holt* (1997) 15 Cal. 4th 619, 667 (*Holt*); accord, *People v. Garcia* (2007) 153 Cal. App. 4th 1499, 1508 (*Garcia*).) Even if the evidence is mainly (or only) circumstantial, we apply the same standard. (See *Holt, supra*, 15 Cal. 4th at p. 668 [" ' " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' " ' "].)

## 2. There Is Sufficient Evidence for [Petitioner]'s Conviction Under Section 186.22, Subdivision (a)

Section 186.22, subdivision (a) provides that "[a]ny person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years." The Supreme Court has divided this provision into three elements: "First, active participation in a criminal street gang, in the sense of participation that is more than nominal or passive; second, knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity; and third, the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang." (*People v. Rodriguez* (2012) 55 Cal. 4th 1125, 1130 (*Rodriguez*).)

The third element is at issue here. Willful promotion, furtherance, or assistance, as the jury was instructed, means essentially the same thing as aiding and abetting. (*People v. Castenada* (2000) 23 Cal. 4th 743, 749-751.) "Because there rarely is direct evidence of a defendant's intent, '[s]uch intent must usually be derived from all the circumstances of the attempt, including the defendant's actions.'" (*People v. Vu* (2006) 143 Cal. App. 4th 1009, 1025.) "Evidentiary considerations which are probative of whether one is an aider and abettor include presence at the scene of the crime, failure to take steps to attempt to prevent the commission of the crime, companionship, flight, and conduct before and after the crime." (*People v. Jones* (1980) 108 Cal. App. 3d 9, 15 (*Jones*); see also *People v. Miranda* (2011) 192 Cal. App. 4th 398, 407-408 (*Miranda*); *People v. Medina* (2009) 46 Cal. 4th 913, 921, 924 (*Medina*).) A rational factfinder may infer the defendant's complicity in committing the crime by "failing

to immediately disassociate [one]self from the perpetrator of the crime." (*Jones*, *supra*, 108 Cal. App. 3d at p. 15.) Furthermore, "'[a] person who knowingly aids and abets criminal conduct is guilty of not only the intended crime . . . but also of any other crime the perpetrator actually commits . . . that is a natural and probable consequence of the intended crime. The latter question is not whether the aider and abettor *actually* foresaw the additional crime, but whether, judged objectively, it was *reasonably* foreseeable." (*Medina*, *supra,* 46 Cal. 4th at p. 920.)

[Petitioner] challenges the sufficiency of the evidence to prove the third element. Specifically, [Petitioner] argues that "[t]he prosecution presented *no evidence* to controvert [his] testimony that on January 12, 2010 he journeyed to Vallejo as a peace emissary, enlisted to facilitate settlement of hostilities between AH and VSL." (Italics added.) We disagree.

The district attorney provided ample (even if circumstantial) evidence for a rational factfinder to conclude [Petitioner] had engaged in criminal street gang activity in violation of section 186.22, subdivision (a) on January 12, 2010. To begin, [Petitioner] was a well-respected and active high-ranking member of the Sureños gang at the time of Tucker's murder. Further, the surrounding circumstances of January 12 show some sort of feud or war was building between AH and LVS, including the letter a VSL member had written calling for the killing of three AH members and [Petitioner]. A rational factfinder could have disbelieved [Petitioner]'s stated motive for traveling to Vallejo with Vega and the other AH members; it could have concluded he wanted to help kill Ochoa, or could have reasonably foreseen such an act occurring. (See *Medina*, *supra*, 46 Cal. 4th at p. 920.) Indeed, [Petitioner]'s motive is suspicious in light of his borrowing Allen's car and telling her to not talk to the police about it. [Petitioner]'s purported reason also conflicts with the fact that the AH members obtained a stolen car while in Vallejo, the car in which Vega was traveling when he killed Tucker.

Moreover, the district attorney presented cell phone records and expert witness testimony to place [Petitioner] at the scene of the crime at the time it was committed, not after. Clearly, if a rational factfinder believed this evidence, it could have been enough to prove [Petitioner]'s "presence at the scene of the crime, failure to take steps to attempt to prevent the commission of the crime, companionship, flight, and conduct before and after the crime." (See *Jones*, *supra*, 108 Cal. App. 3d at p. 15.) Or, put another way, a rational factfinder could believe "'a reasonable person in [Petitioner]'s position would have or should have known that the charged offense[s] w[ere] a reasonable [sic] foreseeable consequence of the act aided and abetted.'" (*Medina*, *supra*, 46 Cal. 4th at p. 920.)

In addition, for the next day or so following the incident, [Petitioner] spoke with a high-ranking AH member, Hernandez, over a dozen times, later casting suspicion onto them both, given their affiliations

9

and the evidence ultimately found at Hernandez's home. Specifically, a couple months later police recovered Tucker's murder weapon, a handgun, from Hernandez's complex. The gun had been stolen from Arizona at a time when [Petitioner] and Hernandez lived there; although there was no direct evidence tying either to the theft, the circumstances are suspicious. A rational factfinder could infer [Petitioner] had either personally transferred the gun to Hernandez, or at least had known which of the other co-defendants had done so. [Petitioner] also knew where the stolen vehicle had been dumped, from which a rational factfinder could infer he had helped dump the vehicle or ordered someone else to do so. The district attorney presented expert witnesses who testified that gang members generally know which other members have weapons, and believe the existence and handling of stolen cars are important.

In total, we find all of the evidence the district attorney presented to be more than sufficient for a rational factfinder to conclude [Petitioner] had furthered, promoted or assisted at least one other AH member in committing the felonious criminal activity of killing Tucker. His role in procuring and disposing of the gun, and procuring and potentially disposing of the stolen car, could easily lead the jury to conclude these activities furthered, promoted or assisted in the Tucker murder. (Cf. *Garcia*, *supra*, 153 Cal. App. 4th at p. 1511 [holding that defendant's "current, comprehensive knowledge of what active gang members were doing, coupled with expert testimony, and in conjunction with defendant's commission of weapons offenses, supports the conviction for his active participation in a gang [under section 186.22, subdivision (a)]."]; see also *Jones*, *supra*, 108 Cal. App. 3d at p. 15.) Thus, there was more than substantial evidence supporting the jury's verdict convicting [Petitioner] under section 186.22, subdivision (a).

Although [Petitioner] initially stated in his opening brief that the district attorney had presented "no evidence" for his conviction, in his reply brief he instead downplays the People's evidence and points to other evidence in his favor. "This contention essentially invites us to reweigh the evidence," which we are not in a position to do. (*People v. Hernandez* (2011) 200 Cal. App. 4th 1000, 1005; accord, *Holt*, *supra*, 15 Cal. 4th at pp. 667-668; *Garcia*, *supra*, 153 Cal. App. 4th at p. 1508; *People v. Fierro* (2010) 180 Cal. App. 4th 1342, 1347 ["'Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact.'"].) Substantial evidence supports the conviction.

### 3. Inconsistent Verdicts Do Not Signify Insufficient Evidence

[Petitioner] further argues "that in this case, the court and prosecutor designated the three specific acts charged in counts 1, 2, and 3 as the felonious conduct as the basis for finding the active gang participation charged in count 4 [(§ 186.22, subd. (a))]. Whereas the jury acquitted appellant of his participation in the acts charged in counts 1, 2, and 3, there *ipso facto* was insufficient evidence to prove him guilty of

10

actively participating in a criminal street gang on January 12, 2012." We disagree.

First, we note the plain language of section 186.22, subdivision (a) does not require a conviction of an underlying felony before a defendant may be found guilty of an active gang participation offense. (See *People v. Valenzuela* (2016) 5 Cal. App. 5th 449, 451, review granted Mar. 1, 2017, S239122.) And we decline to read into the statute such a requirement, regardless of any dictum in *Rodriguez* that [Petitioner] contends compels us to do so. (Cf. *People v. Alvarez* (2002) 27 Cal. 4th 1161, 1176 ["[I]t is axiomatic that cases are not authority for propositions not considered."].)

Second, we reject [Petitioner]'s contention that the jury's acquittals on the first three counts somehow imply he did not commit "felonious criminal conduct" sufficient for a conviction under section 186.22, subdivision (a). This line of argument runs contrary to the inconsistent verdicts doctrine—assuming arguendo the verdicts are indeed inconsistent.

Inconsistent verdicts are explicitly allowed by law. (*People v. Lewis* (2001) 25 Cal. 4th 610, 656 (*Lewis*) ["It is well settled that, as a general rule, inherently inconsistent verdicts are allowed to stand."]; accord, *People v. Abilez* (2007) 41 Cal. 4th 472, 512-513 (*Abilez*).) Under section 954, we are not permitted to view "[a]n acquittal of one or more counts" as "an acquittal of *any other* count." (Italics added.) Indeed, "[a] judgment of conviction establishes the necessarily adjudicated elements of the crime involved in the conviction . . . ." (*People v. Cruz* (1996) 13 Cal. 4th 764, 771.) Contrary to [Petitioner]'s arguments, "the existence of inconsistent verdicts [does not] imply that the jury must have been confused" (*Lewis*, *supra*, 25 Cal. 4th at p. 656), nor that it acted unlawfully (*Abilez*, *supra*, 41 Cal. 4th at p. 513). "An inconsistency may show no more than jury lenity, compromise, or mistake, none of which undermines the validity of a verdict." (*Lewis*, *supra*, 25 Cal. 4th at p. 656; cf. *Dunn v. United States* (1932) 284 U.S. 390, 393-394 ["'The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but *that does not show that they were not convinced of the defendant's guilt*. We [could choose to] interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.'"], italics added.)

Recently, Justice Ginsburg pointed out that "inconsistent verdicts shroud in mystery what the jury necessarily decided." (*Bravo-Fernandez v. United States* (2016) 580 U.S. __, __ [137 S. Ct. 352, 366].) That certainly captures our view of the record here. For instance, the jury may have acquitted [Petitioner] on the first three counts, but not the fourth (§ 186.22, subd. (a)), because it may have reached some sort of compromise among the jurors; or believed the prosecution had overreached in charging him with all four offenses, or had failed to prove some distinctive element in each count compared to the three elements of the fourth one. But the fact that the

11

jury's reasoning may be obscure does not mean that the verdict it reached on each count, alone, is without support in the record. To the contrary, "as more fully discussed above, [we] have determined there is sufficient evidence to support the conviction[] and findings rendered in this case. Thus, even if we assume for argument's sake that the jury verdicts were inconsistent, that conclusion does not, of itself, warrant reversal." (*Lewis*, *supra*, 25 Cal. 4th at p. 656; see also § 954.) Even if a gang participation conviction is "*logically inconsistent*" with an acquittal on other counts, "the *inconsistency is not grounds for reversal* [so long as] substantial evidence supported the verdict." (*Miranda*, *supra*, 192 Cal. App. 4th at p. 407, italics added.) Whatever "mystery" may surround the jury's precise rationale for its verdicts, we find no reason to reverse [Petitioner]'s conviction.

*Mancinas*, 2017 WL 1422589, at *4-7.

## B.    Applicable Federal Law

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, *see Jackson v. Virginia*, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, *see id.* at 324.

The Supreme Court has emphasized that "*Jackson* claims face a high bar in federal habeas proceedings." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson*, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, has there been a due process violation. *Jackson*, 443 U.S. at 324. The "prosecution need not affirmatively 'rule out every hypothesis except that of guilt,'" and the reviewing federal court "'faced with a record

of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Wright v. West*, 505 U.S. 277, 296-97 (1992) (quoting *Jackson*, 443 U.S. at 326).

On habeas review, a federal court evaluating the evidence under *Jackson* and *Winship* should take into consideration all of the evidence presented at trial. *LaMere v. Slaughter*, 458 F.3d 878, 882 (9th Cir. 2006) (in a case where both sides have presented evidence, a habeas court need not confine its analysis to evidence presented by the state in its case-in-chief). If confronted by a record that supports conflicting inferences, a federal habeas court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326; *see also McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (finding 9th Circuit erred by failing to consider all of the evidence in light most favorable to the prosecution when it resolved inconsistencies in testimony in favor of petitioner). A jury's credibility determinations are therefore entitled to near-total deference. *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004). Except in the most exceptional of circumstances, *Jackson* does not permit a federal habeas court to revisit credibility determinations. *See id.* (credibility contest between victim alleging sexual molestation and defendant vehemently denying allegations of wrongdoing not a basis for revisiting jury's obvious credibility determination); *see also People v. McGravey*, 14 F.3d 1344, 1346-47 (9th Cir. 1994) (upholding conviction for sexual molestation based entirely on uncorroborated testimony of victim).

Under 28 U.S.C. § 2254(d), a federal habeas court applies *Jackson* and *Winship* with an additional layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). A federal habeas court must ask whether the operative state court decision "reflected an 'unreasonable application' of *Jackson* and *Winship* to the facts of this case." *Id.* at 1275 (citing 28 U.S.C. § 2254(d)(1)). Thus, if the state court affirms a conviction under Jackson, the federal court must

apply section 2254(d)(1) and decide whether the state court's application of *Jackson* was objectively unreasonable. *See McDaniel*, 558 U.S. at 132-33. The *Jackson* standard is applied to a crime as that crime is defined by state law. *Jackson*, 443 U.S. at 324 n.16. To grant relief, therefore, a federal habeas court must conclude that "the state court's determination that a rational jury could have found that there was sufficient evidence of guilt, i.e., that each required element was proven beyond a reasonable doubt, was objectively unreasonable." *Boyer v. Belleque*, 659 F.3d 957, 964-965 (9th Cir. 2011).

Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995). Mere suspicion or speculation cannot support logical inferences, however. *Id.* *Compare United States v. Begay*, 673 F.3d 1038 1043-45 (9th Cir. 2011) (en banc) (evidence about defendant's activities and manner of killing allowed inference of premeditation and is sufficient "because it is 'supported by a chain of logic,' which is all that is required to distinguish reasonable inference from speculation") *with Juan H.*, 408 F.3d at 1278-79 (granting writ where, after resolving all conflicting factual inferences in favor of prosecution, only speculation supported petitioner's conviction for first degree murder under a theory of aiding and abetting). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts." *Coleman*, 566 U.S. at 655.

In sum, sufficiency claims on federal habeas review are subject to a "twice-deferential standard." *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). First, relief must be denied if, viewing the evidence in the light most favorable to the prosecution, there was evidence on which "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 319) (emphasis in original). Second, a state court decision denying a sufficiency challenge may not be overturned on federal habeas unless the decision was "objectively unreasonable." *Id.* (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)).

### C.    Analysis

As mentioned above, on federal habeas review a sufficiency of the evidence claim is performed with reference to the substantive elements of the criminal offense as defined by state law. *See Jackson*, 443 U.S. at 324 n.16. Here, Petitioner claims that, under California Penal Code § 186.22(a), the evidence was insufficient to support his conviction for actively participating in a criminal street gang in regard to the January 12, 2010 murder of Tucker. Dkt. 1 at 5.

Section 186.22(a) provides a stand-alone conviction for "[a]ny person who actively participates in any criminal street gang with knowledge that its members engage in, or have engaged in, a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang . . . ." Cal. Penal Code § 186.22(a).

In the instant case, the trial court instructed the jury that to find Petitioner guilty of participating in a criminal street gang, it had to find the following elements:

> One: That the defendant actively participated in a criminal street gang;
>
> Two: When the defendant participated in the gang, he knew that members of the gang engage in or have engaged in a pattern of criminal gang activity; and
>
> Three: The defendant willfully assisted, furthered, or promoted felonious criminal conduct by members of the gang, either by, A), directly and actively committing a felony offense, or, B), aiding and abetting a felony offense.

37RT 5244-5245.

Concerning the third element, the trial court further instructed:

> As the term is used here, a willful act is one done willingly or on purpose.
>
> Felonious criminal conduct means committing or attempting to commit the following crimes: Conspiracy to commit murder as charged in Count I, murder as charged in Count II, shooting at an occupied motor vehicle as charged in Count III, or assault with a deadly weapon.
>
> To decide whether a member of the gang or the defendant committed conspiracy to commit murder as charged in Count I, murder as charged in Count II, shooting at an occupied motor vehicle as charged in Count III, or assault with a deadly weapon, please refer to the

15

separate instructions that I have given you on that crime.

To prove that the defendant aided and abetted felonious criminal conduct by a member of the gang, the People must prove that:

One: A member of the gang committed the crime;

Two: The defendant knew that the gang member intended to commit the crime;

Three: Before or during the commission of the crime, the defendant intended to aid and abet the gang member in committing the crime; and

Four: The defendant's words or conduct did in fact aid and abet the commission of the crime.

Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose, and he or she specifically intends to, and in fact does, and does in fact aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime.

If you conclude that the defendant was present at the scene of the crime or failed to prevent the crime, you may consider that fact in determining whether the defendant was an aider and abettor. However, the fact that a person is present at the scene of a crime or fails to prevent the crime does not, by itself, make him an aider and abettor.

The People have the burden of proving beyond a reasonable doubt that the defendant did not withdraw. If the People have not met this burden, you may not, you may not find the defendant guilty under an aiding and abetting theory.

37RT 5247-5248.

In arguing his sufficiency of the evidence claim, Petitioner contends that by acquitting him of the "underlying" counts in Case No. SCR595589 (conspiracy to commit murder, murder, and discharging a firearm an occupied motor vehicle), the jury "obviously accepted the defense version of events—that in venturing to Vallejo [Petitioner] sought only to prevent further violent confrontations between AH and VSL . . . ." Dkt. 1-1 at 55. Petitioner further contends that the "strong inference" from a relevant state law case, *People v. Rodriguez*, 55 Cal. 4th 1125 (2012), was that "a conviction under section 186.22, subsection (a) requires a conviction for the felony underlying that gang activity . . . ." *Id.* at 58. Petitioner specifically argues as follows:

. . . the prosecutor here "relied on" the three underlying felonies to

16

> support the active gang participation charge in count 4: "We're talking about shooting in an occupied motor vehicle. We're talking about helping in a conspiracy to kill a gang rival. We're talking about murder." (38RT 5297.) The court's instruction similarly defined the relevant felonious criminal conduct. (CALCRIM No. 1400; 3CT 517.) But based on the evidence presented, the jury properly acquitted [Petitioner] of the three other substantive felonies charged, obviously concluding appellant did *not* aid and abet Vega and Carreon-Lopez in the conspiracy, murder, or shooting at an occupied vehicle. In other words, the jury determined [Petitioner] did not "aid, facilitate, promote, encourage, or instigate" his codefendants' shooting at, or killing Tucker. (CALCRIM No. 401; 3CT 502.)

*Id.* at 59. The state appellate court rejected Petitioner's position, however, as a matter of state law, stating as follows:

> . . . we note the plain language of section 186.22, subdivision (a) does not require a conviction of an underlying felony before a defendant may be found guilty of an active gang participation offense. (*See People v. Valenzuela* (2016) 5 Cal. App. 5th 449, 451, review granted Mar. 1, 2017, S239122.) And we decline to read into the statute such a requirement, regardless of any dictum in *Rodriguez* that Mancinas contends compels us to do so. (*Cf. People v. Alvarez* (2002) 27 Cal. 4th 1161, 1176 ["[I]t is axiomatic that cases are not authority for propositions not considered."].)

*Mancinas*, 2017 WL 1422589, at *6. Moreover, the state appellate court's interpretation of *state law* is not subject to review here. *See Waddington v. Sarausad*, 555 U.S. 179, 192 n.5 (2009).

As noted by the state appellate court, Petitioner does not appear to dispute the evidence on the first two elements of section 186.22(a). *Mancinas*, 2017 WL 1422589, at *4-6. Thus, the state appellate court focused solely on the third element and reasonably applied *Jackson*, when it determined that based on the evidence presented (including cell phone records and expect witness testimony placing Petitioner at the scene of the crime at the time it was committed) "[t]he district attorney provided ample (even if circumstantial) evidence for a rational factfinder to conclude [Petitioner] had engaged in criminal street gang activity in violation of section 186.22, subdivision (a) on January 12, 2010." *Id.* at *5; *see also Maass*, 45 F.3d at 1358 (circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction). Specifically, the state appellate court found "all of the evidence the district attorney presented to be more than sufficient for a rational factfinder to conclude [Petitioner] had furthered, promoted or assisted at

least one other AH member in committing the felonious criminal activity of killing Tucker," stating as follows:

> [Petitioner's] role in procuring and disposing of the gun, and procuring and potentially disposing of the stolen car, could easily lead the jury to conclude these activities furthered, promoted or assisted in the Tucker murder. (Cf. *Garcia*, *supra*, 153 Cal. App. 4th at p. 1511 [holding that defendant's "current, comprehensive knowledge of what active gang members were doing, coupled with expert testimony, and in conjunction with defendant's commission of weapons offenses, supports the conviction for his active participation in a gang [under section 186.22, subdivision (a)]."]; see also *Jones*, *supra*, 108 Cal. App. 3d at p. 15.) Thus, there was more than substantial evidence supporting the jury's verdict convicting [Petitioner] under section 186.22, subdivision (a).

*Id.* at *6.

The record also supports the state appellate court's determination that the evidence was sufficient for the conviction under section 186.22(a). Several witnesses testified Petitioner was a high-ranking Sureño gang member at the time of the murder. 21RT 3043-3044; 22RT 3344-3346; 24RT 3453, 3571, 3576-3577; 26RT 3775-3776; 31RT 4497-4498; 32RT 4539, 4541-4542; 34ART 4809; 36RT 5073-5074. Petitioner acknowledged he was a "person of influence" within the gang. 34ART 4854. On the night at issue, January 12, 2010, Petitioner borrowed his then girlfriend Allen's car, telling her "he was going to go handle some business in Vallejo." 24RT 3484-3486. Petitioner acknowledged he drove fellow gang members to Vallejo that night. 34ART 4884-4886, 4889. While Petitioner's purported reason was to travel to Vallejo as a peace emissary, the state appellate court reasonably determined that a rational factfinder could have "disbelieved [his] stated motive for traveling to Vallejo with Vega and the other AH members; it could have concluded he wanted to help kill Ochoa, or could have reasonably foreseen such an act occurring." *Mancinas*, 2017 WL 1422589, *4-6. Once in Vallejo, Petitioner helped Vega and another AH gang member obtain a stolen car. 34ART 4895-4897. Petitioner, while driving Allen's car, then followed Vega and the AH gang member as the latter drove the stolen car and followed victim Tucker from his Vallejo residence. 34ART 4897-4902, 4904-4905. As mentioned above, the prosecutor presented cell phone records and expert testimony putting

18

Petitioner at the scene of the crime at the time it was committed—Petitioner was driving Allen's car on Interstate 80, following Vega, when Vega shot and killed Tucker. 31RT 4392-4394, 4399-4400; 34ART 4904-4913.

When Petitioner talked to Allen later that night, he told her that if the police asked about him, to tell them she and petitioner did not talk anymore. 24RT 3488-3489. He also told her to deny that he had used the car that night. 24RT 3489. The state appellate court reasonably pointed out that Petitioner's motive was "suspicious in light of his borrowing Allen's car and telling her to not talk to the police about it." *Mancinas*, 2017 WL 1422589, *5. The next day, Petitioner called Allen and had her search her car for bullets, during which she found two bullets, though Petitioner thought there should be more. 24RT 3492-3497. Petitioner spoke with Hernandez, a high-ranking Sureño gang member, twenty-one times between January 12 and the next day. 29RT 4074-4075, 4095; 30RT 4356-4357. The police recovered the murder weapon from Hernandez's apartment complex a couple months after the murder. 25RT 3714-3718, 3721-3724. This gun had been stolen in Arizona in July 2007. 25RT 3728-3729. Petitioner lived in Arizona at the time the gun had been stolen. 26RT 3778. Thus, sufficient evidence exists under the deferential *Jackson* standard, where the evidence is viewed in the light most favorable to the prosecution, to support the conclusion that any rational trier of fact could have found beyond a reasonable doubt that Petitioner had "willfully assisted, furthered, or promoted" at least one other AH gang member in committing the "felonious criminal conduct" of killing Tucker. *See Jackson*, 443 U.S. at 319.

Petitioner also argues that the jury's acquittals on the first three counts somehow imply he did not commit "felonious criminal conduct" sufficient for a conviction under section 186.22(a). Dkt. 1-1 at 60-61. He specifically argues as follows:

> Notwithstanding the standard of review favoring the judgment below, the jury's verdicts in this matter demonstrate the evidence supporting the section 186.22, subdivision (a) charge was legally insufficient. Independent of the three remaining underlying felonies for which appellant was acquitted, there was insufficient evidence proving he actively participated in a criminal street gang on January 12, 2010 by willfully promoting, furthering, or assisting in any of those charged felonies.

*Id.* As mentioned above, the state appellate court also rejected this argument as inconsistent with the plain language of section 186.22(a). *Mancinas*, 2017 WL 1422589, at *6. The state appellate court added that even assuming arguendo the verdicts were indeed inconsistent, Petitioner's "line of argument runs contrary to the inconsistent verdicts doctrine," which states "it is well settled that, as a general rule, inherently inconsistent verdicts are allowed to stand." *Id.* (quoting *People v. Lewis*, 25 Cal. 4th 610, 656 (2001)). This Court finds the state appellate court's determination reasonable. The Supreme Court has made clear that inconsistent verdicts may stand when one of the verdicts is a conviction and the other an acquittal. *Ferrizz v. Giurbino*, 432 F.3d 990, 992 (9th Cir. 2005) (citing *United States v. Powell*, 469 U.S. 57, 65 (1984); *Dunn v. United States*, 284 U.S. 390, 393 (1932)). The rationale for this rule is that the acquittal may be an exercise of leniency by the jury not necessarily grounded in its view of the evidence. *Id.* at 993. Thus, the sufficiency of evidence supporting a given conviction is assessed "independent of the jury's determination that evidence on another count was insufficient." *Powell*, 469 U.S. at 67.

In conclusion, after viewing the evidence presented at trial in the light most favorable to the prosecution and presuming that the jury resolved all conflicting inferences from the evidence against Petitioner, the Court finds that a rational juror "could reasonably have found beyond a reasonable doubt" that Petitioner engaged in criminal street gang activity in violation of section 186.22(a). *Id.* at 325-26. Mindful of the "sharply limited nature of constitutional sufficiency review" and applying the "additional layer of deference" required by AEDPA, this Court is unable to find that the state appellate court's rejection of this claim was objectively unreasonable. *Juan H.*, 408 F.3d at 1274-75; *see also Jackson*, 443 U.S. at 319, 326. Accordingly, Petitioner is not entitled to habeas relief, and his sufficiency of the evidence claim is DENIED.

## VI.   CERTIFICATE OF APPEALABILITY

No certificate of appealability is warranted in this case. For the reasons set out above, jurists of reason would not find this Court's denial of Petitioner's claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate

20

of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

## VII. CONCLUSION

For the reasons outlined above, the Court orders as follows:

1.      The petition for a writ of habeas corpus is DENIED, and a certificate of appealability will not issue.  Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

2.      The Clerk of the Court shall terminate any pending motions and close the file.

IT IS SO ORDERED.

Dated:  January 3, 2020

_____
YVONNE GONZALEZ ROGERS
United States District Judge